*510 OPINION OF THE COURT
James D. Pagones, J.
Petitioner Robert B. Allers, guardian of Alice Kent, requests an accounting of the respondent Jane Smith, former attorney-in-fact of Alice Kent, pursuant to Mental Hygiene Law § 81.44. Respondent moves for dismissal of the underlying petition on the ground that the Court lacks jurisdiction to award an accounting, and further requests financial sanctions including attorney fees pursuant to 22 NYCRR 130-1.1.
The relevant facts are as follows. In June 1998, a psychiatric evaluation found Alice Kent incapable of making financial decisions. Upon this determination, Jane Smith, the niece of Kent’s deceased husband, became representative payee of Kent’s Social Security checks. Two months later Kent mortgaged her home for the sum of $20,000. Allegedly, approximately $3,000 of this mortgage was retained by Smith personally. The use or whereabouts of the remainder of the mortgage are not indicated in the petition or respondent’s answer. In November 1998, Smith obtained power of attorney, living will and health care proxy over Kent. Robert B. Allers, Dutchess County Commissioner of Social Services, petitioned the Court on December 15, 2000 to appoint a guardian for Kent pursuant to Mental Hygiene Law article 81. On February 1, 2001, Kent was determined to be incapacitated pursuant to Mental Hygiene Law § 81.02, and Allers was appointed guardian for personal needs and property management of Kent. Simultaneously, the power of attorney in favor of Smith was rescinded.
Respondent urges the Court lacks jurisdiction to order an accounting. She cites no authority other than counsel’s interpretation of Mental Hygiene Law § 81.44. A lengthy precedent proves otherwise. It is well established that Supreme Court possesses the jurisdiction to order an accounting when four factors exist. They are (1) a fiduciary relationship, (2) entrustment of money or property, (3) no other remedy, and (4) a demand and refusal of an accounting. (300 Broadway Realty Corp. v Kommit, 37 Misc 2d 325 [Sup Ct, Albany County 1962]; 1 NY Jur 2d, Accounts and Accounting, § 34.) This case falls within this demesne. Both parties acknowledge that Kent executed a power of attorney to Smith in November 1998.* Granting a power of attorney creates a fiduciary relationship between the principal, Kent, and the agent, Smith.
*511 The parties also agree that Kent entrusted Smith with money and property after the June 1998 psychiatric determination. A power of attorney entails the handling of property, which may include power to mortgage, sell or otherwise dispose of any real or personal property without advance notice or approval. (General Obligations Law § 5-1501.) This unilateral authority, combined with the fiduciary relationship, requires the agent to reveal all of her dealings pertaining to Alice Kent’s money. (American Inst. for Mental Studies v Brinn, 1985 US Dist LEXIS 19520, 1985 WL 1424 [SD NY, May 24, 1985, Haight, J.].) Where disclosure does not occur as here, a principal may seek a court-ordered accounting to find the whereabouts of the entrusted money. (Id.)
The third criterion requires that no other adequate form of remedy exists. Based on the facts presented, an accounting constitutes the only form of remedy available for Kent.
Lastly, precedent requires a demand for an accounting and a refusal of said demand in certain cases. A demand for an accounting becomes necessary when a principal authorizes an agent to collect money belonging to the principal and hold it for her/him. The power of attorney authorizes Smith to collect and hold onto property/money of Kent; therefore, a demand would usually be necessary for the award of an accounting. Although Kent made no formal demand for an accounting, a request was made upon the filing of the original guardianship petition. The application now under consideration continues that demand. It is reasonable to conclude that Smith received constructive notice that an accounting would be demanded at the time the Department of Social Services was engaged and facts pertaining to Kent’s finances were disclosed. To date, Smith has refused to account for the money she allegedly retained for her personal use.
This case adds a unique twist to the customary accounting cases. Ordinarily, the principal in the fiduciary relationship brings the petition for an accounting herself. However, on February 1, 2001, this Court declared the principal incapacitated, requiring the protection of the Court, and assigned Allers as guardian. The law compels the guardian to “preserve, protect, and account for [the ward’s] property and financial resources faithfully” (Mental Hygiene Law § 81.20 [a] [6] [ii] [emphasis added]). The guardian also must “exercise care to avoid intentional or unintentional waiver, surrender, impairment, or alteration of the person’s rights outside of the guardianship order” (Law Rev Commn Comments, reprinted in McKin *512 ney’s Cons Laws of NY, Book 34A, Mental Hygiene Law § 81.20, at 368, quoting A Model Code of Ethics for Guardians, 11 Whittier L Rev 543, 556 [1989]). To fulfill these obligations a guardian must have the power to demand an accounting when the ward has a right to such action and upon refusal the court must order it.
Petitioner has brought this petition pursuant to Mental Hygiene Law § 81.44 which details the procedure a guardian must undertake to discover withheld property. As respondent has pointed out, the article is devoid of the term “accounting.” Several courts, however, have used accountings to discover withheld property under SCPA 2103, an analogous proceeding. (Matter of Goggins, 227 AD2d 481, 482 [2d Dept 1996]; Bailly, Practice Commentaries, McKinney’s Cons Laws of NY, Book 34A, Mental Hygiene Law § 81.44, at 452.) An accounting serves as a way to prove or disprove allegations of misappropriation. As such, ordering an accounting in this case where one party believes another to have withheld property follows logic.
The purpose for which New York adopted the Mental Hygiene Law also supports the ordering of an accounting. The law constructs a system that aids incapacitated persons in meeting their individual needs while permitting them “to exercise the independence and self-determination of which they are capable” (Mental Hygiene Law § 81.01). To accomplish this goal, the courts presiding over article 81 proceedings must customize each guardianship to satisfy the needs of the individual. (Mental Hygiene Law § 81.01.) This affords the judge broad discretion in handling each case. In the case at hand, Alice Kent, an incapacitated woman, has a right to an accounting of her funds held by her former attorney-in-fact. However, she is incapable of seeking such an order. By allowing a guardian to seek an accounting, the purpose and goal of article 81 are furthered by providing for the individual needs of the incapacitated person.
Accordingly, respondent’s motion to dismiss is denied. The petition for an accounting is granted. Even though it is only alleged that the respondent retained funds from the incapacitated person, she nonetheless has the burden of proving that “[s]he has derived no unfair advantage from h[er] fiduciary relation [ship]” (Vinlis Constr. Co. v Roreck, 30 AD2d 668 [2d Dept 1968]). Failing to meet this burden the respondent is ordered to account for all money and property of Alice Kent managed by her, including but not limited to the $3,000 derived *513 from a mortgage incurred by Kent, within 30 days of service of a copy of this order with notice of entry.
Respondent’s application for sanctions is denied.

 The issue of whether Kent had the requisite capacity in light of the June 1998 psychiatric evaluation is not before the Court.