Matter of Gershenoff (2003 NY Slip Op 23956)

Matter of Gershenoff

2003 NY Slip Op 23956 [2 Misc 3d 847]

December 24, 2003

Supreme Court, New York County,

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, May 5, 2004

[*1]
In the Matter of Robin Garson, Petitioner, for the Appointment of a Guardian for the Person and/or Property of Sarah Gershenoff, an Alleged Incapacitated Person.
Supreme Court, New York County, December 24, 2003

APPEARANCES OF COUNSEL

Ira Keith Miller, Brooklyn, for Robin Garson. Robert Kruger, New York City, for Sarah Gershenoff. Barry Elisofon, Brooklyn, for Michael Garson.

{**2 Misc 3d at 847} OPINION OF THE COURT

Walter B. Tolub, J.
This is an application, pursuant to Mental Hygiene Law § 81.44, to compel an accounting and the turnover of funds to the property management guardian for Sarah Gershenoff.{**2 Misc 3d at 848}
By order of the court dated March 21, 2002, Robert Kruger was appointed guardian of the property of Sarah Gershenoff, a cognitively impaired 91-year-old woman living at home with around-the-clock home care. The case has occasioned some notoriety because Ms. Gershenoff's nephews, Michael and Gerald Garson, are sitting Supreme Court Justices in Kings County, and Robin Garson, Gerald Garson's wife, is a Civil Court Judge, and the guardian of Sarah Gershenoff's personal needs.
In March of 1997, Ms. Gershenoff executed a series of powers of attorney naming Michael Garson as her attorney-in-fact. From March of 1997 through December of 2000, the Garson family withdrew over $600,000 from Ms. Gershenoff's accounts. Roughly $350,000 of these funds were "gifted" to Garson family members. The balance of these funds, after deducting verifiable expenses, amounts to roughly $163,000, and it is this $163,000 representing withdrawals and reimbursements for which no documentation exists that the guardian of the property of Ms. Gershenoff demands be returned to the estate (transcript at 177).
The guardian also states that the current expenses exceed income by almost $4,000 per month and that the estate faces imminent depletion. Michael Garson has offered, on the record, to cover the "shortfall" for one year in settlement of the estate's claim.
The court took the testimony on December 8th, 12th and 16th of Howard Fein, a certified public accountant, and of Justice Michael Garson. The parties agree that although the guardian for Ms. Gershenoff's property originally claimed slightly in excess of $178,000 as undocumented withdrawals, the actual amount in dispute is $163,000. The parties also stipulated that "Sarah Gershenoff, during the period from 1997 through 2000 ate most of her meals (breakfast, lunch and dinner) out at various local food establishments and restaurants, seven days a week, accompanied by her aide (when she had an aide), and at Sarah Gershenoff's expense" (stipulation dated Dec. 8, 2003).
The sum and substance of Mr. Fein and Justice Garson's testimony was that Justice Garson gave Ms. Gershenoff cash to cover her out-of-pocket living expenses and paid her aides in cash. Justice Garson claims that the sum of the cash he expended actually exceeds the amount of undocumented withdrawals.
As relevant, Justice Garson testified about Ms. Gershenoff's lifestyle, and how, during the course of the three-year and nine{**2 Misc 3d at 849}-month period of his stewardship, he replenished the cash in Ms. [*2]Gershenoff's purse on a weekly basis so that there was always $400-$600 on hand (transcript at 52, 53). He described Ms. Gershenoff's shopping and dining habits, and additionally testified to cash payments made to Ms. Gershenoff's aides.
Based on information supplied by Justice Garson regarding Ms. Gershenoff's lifestyle, and from her tax, pension, interest and dividend statements, Mr. Fein constructed a cash flow sheet which purports to account for Justice Garson's undocumented withdrawals.
The analysis is, however, fundamentally flawed in that it is not a closed end system and many of the items listed as expenses are clearly items which would have been paid for by check. These items include rent, utilities, telephone, car service, beach club membership, and medical insurance. Indeed from the check registers presented by Justice Garson (respondents' exhibits A, B, C), these items had previously been paid for by check. Additionally, and from what few receipts Justice Garson provided, it appears that Ms. Gershenoff frequently used her American Express card to pay for some of her dining expenses, and for medications and sundries purchased at a local Duane Reade store (respondents' exhibits E, F). In short, it is simply impossible for this court to determine with any degree of certainty how much of Ms. Gershenoff's expenses was paid for by check and how much was paid for in cash.
The court notes, that although most of the notoriety attending this case focused on "gifts" made to various members of the Garson family, that issue is not before the court. Medicaid gifting, or Medicaid planning, has received judicial sanction from our highest court (Matter of Shah, 95 NY2d 148 [2000]), and although the gifting was done prior to the appointment of a guardian and without judicial sanction, there is no claim by the guardian of Ms. Gershenoff's property for a return of these gifts. The issue before this court is the undocumented withdrawals that occurred outside of the gifting.
When Justice Garson consented to act as an attorney-in-fact, he became a fiduciary. A power of attorney creates a fiduciary relationship between principal and agent (Matter of Roth, 283 AD2d 504 [2d Dept 2001]; Mantella v Mantella, 268 AD2d 852 [3d Dept 2000]; Matter of Kent, 188 Misc 2d 509 [Sup Ct, Dutchess County 2001]). As such, Justice Garson had a duty to act with the utmost good faith in accordance with the principles of moral fidelity, loyalty and fair dealing (Semmler v Naples, 166 AD2d {**2 Misc 3d at 850}751 [3d Dept 1990], appeal dismissed 77 NY2d 936 [1991]). That duty, as far as it relates to this proceeding, includes accounting for all of the withdrawals made from Ms. Gershenoff's accounts (Matter of Kent, supra).
The right to an accounting is premised on the relationship of the parties. There is no requirement that there be any allegation of wrongdoing (Morgulas v Yudell Realty, 161 AD2d 211 [1st Dept 1990]). However, the burden of establishing the legitimacy of all of these transactions lies with the fiduciary (Gordon v Bialystoker Ctr. & Bikur Cholim, 45 NY2d 692 [1978]; Sepulveda v Aviles, 308 AD2d 1 [1st Dept 2003]), and it is the failure to establish the legitimacy of these transactions that renders a fiduciary liable.
Justice Garson admittedly kept no records of cash payments made on behalf of or to his aunt (transcript at 126, 130, 134), and made no attempt to organize or recover receipts until after his stewardship ended. He claims that what receipts he had were either turned over to the late Lynn Terrelonge, the initial court evaluator, or were purloined by his cousin Janice Tannen (transcript at 74). Additionally, and inexplicably, some receipts have trickled in from the estate of Ms. Gershenoff's late accountant, a Mr. Mendez. There are, however, no contemporaneous records or ongoing accounts of cash [*3]expenditures.
As a fiduciary, Justice Garson had a duty to account for the monies he withdrew from his aunt's accounts; that is the standard by which he is being held to account, and to the extent that he has been unable to do so, renders him liable.
The court concludes that Justice Garson has breached his fiduciary duty in that he has failed to account for the funds at issue in this application, and that he is liable to Ms. Gershenoff's estate for the amount unaccounted for. Accordingly, Justice Michael Garson is directed to return $163,000 to the guardian for the property of Ms. Gershenoff.