■ In the Matter of the Trust Made by Mary XX. Linda A. McCall, Appellant; Keybank National Association, as Trustee of the Trust Made by Mary XX., Respondent. [822 NYS2d 659]—

Spain, J. Appeal from an order of the Supreme Court (Teresi, J.), entered March 10, 2006 in Albany County, which denied petitioner's application for a compulsory accounting.

Petitioner petitioned Supreme Court pursuant to Mental Hygiene Law article 81 to be appointed guardian of the person and property of Mary XX., her aunt (her father's half sister), due to Mary's inability to care for herself as a result of dementia. In December 2000, Supreme Court appointed petitioner as guardian of Mary's person, but denied the petition to the extent that it sought appointment as guardian of her property, finding no need for the latter. As that order noted, respondent was the named successor trustee to a revocable trust created by Mary in 1989, later amended several times. The trust provided that dur-

ing Mary's lifetime the trustees were to pay the net income to her and, in their discretion, to pay the principal as needed "to provide adequately and properly for the support, maintenance, welfare and comfort of [Mary]." Upon her death, the trust provided for certain pecuniary distributions to her half brother (or his children if he predeceased Mary), an employee (Charles Brennan) and a designated church; the trust would continue for the benefit of Mary's sister but, since she died in 2000, the balance would go to Brennan if living, or to Mary's half brother.

In addition to the ordinary statutory duties conferred upon a guardian of the person (*see* Mental Hygiene Law § 81.20 [a] [1]-[5], [7]), Supreme Court's order appointing petitioner as guardian provided that she: "shall have the authority to direct Key Trust Company as attorney-in-fact under Power of Attorney dated May 3, 1995, and as Trustee [of the Mary XX. trust] as amended . . . , to pay for the care and maintenance of . . . [Mary] in accordance with the following plan: "It shall be the duty of the guardian *to examine all the relevant circumstances*, including the opinion of treating health professionals, *the existing financial circumstances*, and the existing physical environment as to what may be the best place for . . . [Mary] to reside in accordance with [Mental Hygiene Law § 81.22 (a) (9)] and the best arrangements for her continued care and treatment, including who shall provide care and assistance . . . , and what home improvements and hospital equipment may be necessary in order to allow . . . [Mary] to reside in her home comfortably and safely pursuant to [Mental Hygiene Law § 81.22 (a) (1)]" (emphases added).

Petitioner thereafter requested certain documents from respondent, including bank statements, tax returns and an inventory of assets, and requested an accounting, which respondent refused premised upon petitioner's purported lack of standing. Petitioner then commenced this petition for a compulsory accounting in order to fulfill her obligation as guardian to examine Mary's financial circumstances, which respondent opposed. Supreme Court denied the requested relief, holding that petitioner's powers as guardian of the person "are limited to making demand of [r]espondent[ ] solely for payments of expenses acquired through the maintenance and support of Mary." The court noted that no guardian of the property had been appointed (*see* Mental Hygiene Law § 81.20 [6]; § 81.21) because respondent is acting as both trustee and attorney-in-fact of Mary, and indicated it had intentionally not conferred upon petitioner "powers relative to the financial assets of [Mary]."

Petitioner appeals, contending that refusing her access to

Mary's financial information and status denies her the ability to carry out her court-ordered duties as guardian, specifically, to examine Mary's financial and other circumstances in order to facilitate decision making as to her care, treatment and living arrangements. Because we find that petitioner made a sufficient showing that the requested accounting is necessary in order to carry out her duties as guardian, we grant the relief in the petition.

While a Mental Hygiene Law article 81 guardian may exercise only those powers authorized by court order (*see* Mental Hygiene Law § 81.20 [a] [1]), Supreme Court can and did tailor the guardianship to the needs of the incapacitated person (*see* Mental Hygiene Law § 81.01). Under established principles, "Supreme Court possesses the jurisdiction to order an accounting when four factors exist. They are (1) a fiduciary relationship, (2) entrustment of money or property, (3) no other remedy, and (4) a demand and refusal of an accounting" (*Matter of Kent*, 188 Misc 2d 509, 510 [2001] [citation omitted]; *see 300 Broadway Realty Corp. v Kommit*, 37 Misc 2d 325 [1962]). Respondent concedes that, as the trustee and her attorney-in-fact, it has a fiduciary relationship with Mary (*see Matter of Kent, supra* at 510; *see also Mantella v Mantella*, 268 AD2d 852 [2000]; *Matter of Gershenoff*, 2 Misc 3d 847, 849 [2003], *affd* 17 AD3d 243 [2005]), and there is no question that Mary's money and property have been entrusted to respondent as trustee, which refused petitioner's demand for an accounting or financial information. Further, petitioner appears to be correct that since Mary is incapacitated, no one else except her guardian would have standing to compel an accounting during Mary's lifetime, not even the remainder beneficiaries of the trust (*see Matter of Malasky*, 290 AD2d 631, 632 [2002]). This satisfies the final "no other remedy" prong, entitling petitioner to compel an accounting (*Matter of Kent, supra* at 510). "There is no requirement that there be any allegation of wrongdoing" (*Matter of Gershenoff, supra* at 850; *see Morgulas v Yudell Realty*, 161 AD2d 211, 213 [1990]).

We reject respondent's contentions that there must be an independent fiduciary relationship between the guardian and respondent, and that its fiduciary relationship with Mary did not extend to her guardian. Mary would clearly have a right to compel an accounting; since she is incapacitated, petitioner was assigned to protect and provide for her person, as well as the duty to evaluate all her relevant circumstances related to health, finances and to otherwise make decisions in her best interests. "To fulfill these obligations a guardian [(i.e., petitioner)] must

have the power to demand an accounting when the ward [(i.e., Mary)] has a right to such action and upon refusal the court must order it" (*Matter of Kent, supra* at 512).

While Supreme Court noted that respondent's status as sole trustee and attorney-in-fact obviated the need to appoint a guardian of the property and that it had not intended to give petitioner "powers relative to the financial assets of Mary," we note that petitioner does not herein seek the power to manage Mary's trust or financial affairs as a guardian of property (*see* Mental Hygiene Law § 81.20 [6]; § 81.21). Rather, she seeks only *information* to exercise those particular, limited powers conferred upon her in the guardianship order, which were never modified (*see* Mental Hygiene Law § 81.36 [a]). Relegating petitioner to making demands of respondent for payment of expenses, without any information as to her financial circumstances, is untenable. "By allowing a guardian to seek an accounting, the purpose and goal of article 81 are furthered by providing for the individual needs of the incapacitated person" (*Matter of Kent, supra* at 512; *see* Mental Hygiene Law § 81.01). Accordingly, the petition for an accounting is granted.

Peters, J.P., Mugglin, Rose and Lahtinen, JJ., concur. Ordered that order is reversed, on the law, with costs, and petition granted.