*496 OPINION OF THE COURT
Eileen Bransten, J.
Defendants Jason Kennedy (Kennedy) and Kennedy Associates (KA) (collectively the moving defendants) move to dismiss the complaint on the basis of plaintiffs failure to timely serve the complaint pursuant to CPLR 306-b. Plaintiff opposes (motion sequence No. 005).
Plaintiff Daniel Arbeeny (plaintiff) moves for an accounting, to compel KA to answer the complaint, for an order directing expedient service pursuant to CPLR 308 (5) and for leave to amend the complaint to both add and withdraw claims and to withdraw Joel Kandy as a defendant. The moving defendants, Kennedy Executive Search, Inc. (KES) and defendant Jack Kandy (Kandy) (collectively defendants)* oppose plaintiffs motion but for plaintiffs motion for leave to amend the complaint (motion sequence No. 004).
Background
Prior to its dissolution in February 2009, KES was a New York-based executive search firm. Kandy was KES’s president.
KES was affiliated with KA, a British executive search firm.
Kennedy is the president of KA. Kennedy resides in Great Britain.
Plaintiff was formerly employed as an executive recruiter with the now-defunct KES.
Plaintiff signed an employment agreement with KES in January 2006. Pursuant to that agreement, plaintiff was to receive a salary and a percentage of commissions earned as a result of placements he secured.
Plaintiff alleges that, in October 2006, the defendants unilaterally lowered his salary. Plaintiff further alleges that defendants terminated him in March or April of 2007 for refusing to accept a reduction in his commission-based pay.
Plaintiff brought suit in April 2007, seeking to recover allegedly outstanding salary and commission pay. KES and Kandy, the only defendants plaintiff served, moved to dismiss the complaint in September 2007. The court granted the motion to dismiss in April of 2008. The First Department reversed in part in January 2010 (Arbeeny v Kennedy Exec. Search, Inc., 71 AD3d 177 [2010]).
*497 Plaintiff now moves for leave to amend the complaint, for an accounting and for an order directing expedient service on Kennedy, directing defendants to deposit funds with the court and directing KA to answer the complaint.
Defendants Kennedy and KA move to dismiss the claim on the ground that they have not been served.
Analysis
I. The Moving Defendants’ Motion to Dismiss
The moving defendants move to dismiss the complaint for failure to timely serve pursuant to CPLR 306-b.
Plaintiff opposes. Plaintiff argues that service upon KES constituted service upon KA on the basis that KES was a “mere department” of KA and that, alternatively, KES was KA’s agent. Plaintiff further contends that because he unsuccessfully attempted to serve Kennedy on numerous occasions in New York State and previously indicated his intent to move for expedient service, the court should thus deny the moving defendants’ motion to dismiss and direct expedient service on Kennedy.
The moving defendants reply that plaintiffs asserted “mere department” and agency theories are inapplicable in actions where the long-arm statute, CPLR 302, provides a basis for personal jurisdiction. The moving defendants contend that the underlying case has New York roots such that the long-arm statute applies.
Plaintiffs “mere department” and agency theories sound in corporate presence doctrine. Both theories examine the relationship between a New York entity and a non-New York entity over which personal jurisdiction is sought in order to determine whether the non-New York entity is doing business in New York. If an entity is doing business in New York, it is present in New York for jurisdictional purposes. ,
a. “Mere Department” and Agency Theories of Corporate “Presence”
In Taca Intl. Airlines, S.A. v Rolls-Royce of England, the Court of Appeals asked “was [the subsidiary] a really independent entity or a mere department of [the parent]? If the latter, then obviously [the parent] was doing extensive business in our State through its local department separately incorporated as [the subsidiary].” (15 NY2d 97, 102 [1965].) The Court in that case found that the domestic subsidiary was a mere department of the foreign parent because of the parent-subsidiary relation *498 ship, the sharing of executive personnel between the two, similar training and policies between the two entities and the financial dependence of the subsidiary on the parent. Upon these factors, the court reasoned that service on the subsidiary constituted service on the parent. (Id.; see also Delagi v Volkswagenwerk AG of Wolfsburg, Germany, 29 NY2d 426, 432 [1972] [stating “this court has never held a foreign corporation present on the basis of control, unless there was in existence at least a parent-subsidiary relationship. The control over the subsidiary’s activities . . . must be so complete that the subsidiary is, in fact, merely a department of the parent” (citations omitted)]; Volkswagenwerk AG. v Beech Aircraft Corp., 751 F2d 117, 120-122 [2d Cir 1984] [finding that, under New York law, important factors to be considered in determining whether a subsidiary is a mere department of its parent corporation include the “financial dependency of the subsidiary on the parent . . . the degree to which the parent corporation interferes in the selection and assignment of the subsidiary’s executive personnel and fails to observe corporate formalities . . . (and) the degree of control over the marketing and operational policies of the subsidiary”].)
In Frummer v Hilton Hotels Intl., the Court of Appeals found Hilton Hotels (U.K.) Ltd., a British corporation, to be doing business in New York because the activities of the Hilton Reservation Service, a separate but commonly owned company with offices in New York, made the latter an agent for the former. (19 NY2d 533 [1967].) The court found that common ownership supported an inference of an agency relationship. (Id. at 538.) The court further found — “and this is the significant and pivotal factor — the [Hilton Reservation] Service does all the business which [Hilton Hotels (U.K.) Ltd.] could do were it here by its own officials.” (Id. at 537; see also Amsellem v Host Marriott Corp., 280 AD2d 357, 359 [1st Dept 2001].)
The moving defendants cite to Siegel, New York Practice for the proposition that “the Taca and Frommer [sic] doctrines only arise when ‘the cause of action itself has no New York roots.’ ” (Affirmation of Cary Samowitz in partial opposition to plaintiffs motion [motion sequence No. 004 Samowitz affirmation], at 6, quoting Siegel, NY Prac § 82, at 142 [4th ed].) The moving defendants argue that plaintiffs cause of action has a basis in New York, and, thus, plaintiff may not invoke presence doctrine where another basis for jurisdiction exists. (Id.)
However, the moving defendants’ citation does not support the proposition for which it is offered. Rather, Siegel merely *499 clarifies that the need to embark on presence doctrine analysis does not arise where the long-arm statute provides a basis for personal jurisdiction over the parent corporation. (Siegel, NY Prac § 82, at 142-143 [4th ed].) This reasoning does not mean that presence doctrine is unavailable in the face of an alternative basis for personal jurisdiction. The moving defendants do not show that the court is precluded from considering plaintiffs argument that KES was a mere department of KA.
Plaintiff alleges, but has not shown, the existence of a parent-subsidiary relationship between KES and KA. Plaintiff asserts that his employment agreement with KES “states that [Plaintiff] ‘shall work closely with the team of consultants at KES and at KES’s foreign-based Affiliates,’ which is defined to refer to KES’s parent company, Kennedy Associates” (affirmation of Nathaniel Smith in support of plaintiffs motion [Smith affirmation], If 25).
Plaintiffs employment agreement defines “Affiliate” to mean “KES’s parent company, subsidiaries of KES and its parent company, and any other company under common or similar ownership or control with KES and its parent company.” (Smith affirmation, exhibit B at 26.) However, KA is not expressly identified as the parent company referred to in plaintiff’s employment agreement. Thus, plaintiff does not show “a classic parent-subsidiary relationship, [or] nearly identical ownership” as is required by plaintiffs mere department theory, neither in the employment agreement or anywhere else. (Volkswagenwerk AG, 751 F2d at 120.) To be sure, defendant Kennedy has conceded that KES and KA are affiliated through common ownership. (July 5, 2007 affidavit of Jason Kennedy in opposition to plaintiffs motion for attachment, 1f 4.) However, plaintiff has not shown common ownership to be equivalent to the parent-subsidiary relationship or near-identical ownership that plaintiffs “mere department” theory requires.
Furthermore, as Taca, Delagi and Volkswagenwerk AG. explain, the parent-subsidiary relationship is only a threshold inquiry in “mere department” analysis. The court will not find one entity to be a “mere department” of another legally separate entity unless plaintiff shows more. Courts have found the parent’s complete control of the subsidiary, the subsidiary’s financial dependence on the parent, the entities’ failure to observe corporate formalities and other factors important in this regard. (See 497-498, supra.) Plaintiff alleges similar factors, but his evidence does not establish his allegations to be *500 valid. Plaintiff does not establish that KES was a mere department of KA.
However, plaintiffs agency theory has merit. Kennedy, in his July 5, 2007 affidavit in opposition to plaintiffs motion for attachment, stated that
“KA has been engaged in executive recruitment in the United Kingdom for twelve years, with specialization in the financial services industry. Because financial services are increasingly a global industry, in 2005, [KES] was established as a New York corporation to focus on placement in the New York and U.S. financial services industries. Although affiliated through common ownership, defendants KA and KES are separate legal entities.” (1i 4.)
Thus, KES and KA are commonly owned, and KES was established to “do all the business which [KA] could do were it here by its own officials.” (Frummer, 19 NY2d at 537; see also AirTran N.Y., LLC v Midwest Air Group, Inc., 46 AD3d 208, 219 [1st Dept 2007] [finding that “(i)t is apparent that Airlines is doing in New York what defendant would do if it were here instead”].) Furthermore, plaintiffs exhibits contain a marketing brochure for the “Kennedy Group” which states, “Headquartered in London under the name Kennedy Associates with an office in New York under the name of Kennedy Executive Search, we are also affiliated with organizations in Asia.” (Smith affirmation, exhibit B, at 40.)
KES is, for jurisdictional purposes, an agent of KA. Therefore, service upon KES suffices as service upon KA, and KA therefore must answer the complaint. The moving defendants’ motion to dismiss is denied as to KES.
b. CPLR 306-b
The CPLR directs that “[s]ervice of the summons and complaint . . . shall be made within one hundred twenty days after filing of the summons and complaint ... If service is not made upon a defendant within the time provided in this section, the court, upon motion, shall dismiss the action without prejudice as to that defendant, or upon good cause shown or in the interest of justice, extend the time for service.” (CPLR 306-b.)
The Court of Appeals has clarified that “good cause” and the “interest of justice” under CPLR 306-b are separate standards. (Leader v Maroney, Ponzini & Spencer, 97 NY2d 95, 104 [2001].) In determining whether either standard warrants extension of the 120-day period for service, “[t]he statute empowers a court *501 faced with the dismissal of a viable claim to consider any factor relevant to the exercise of its discretion. No one factor is determinative.” (Id. at 106.)
Plaintiff filed his summons and complaint on April 27, 2007. On August 9, 2007, Judge Moskowitz signed a preliminary conference order directing that “Plaintiff will make a motion for alternative service on Jason Kennedy and will make a motion regarding personal jurisdiction of Kennedy Associates.” Plaintiff filed neither motion.
On September 11, 2007, after the 120-day period from plaintiffs filing of the summons and complaint had expired, defendants filed a motion to dismiss. On September 17, 2007, plaintiff wrote a letter to the court explaining, inter alia, his intention to “make an application to the Court to obtain jurisdiction” over Kennedy and KA. (Smith affirmation, exhibit G, at 3.) Plaintiff wrote another letter to the court on October 11, 2007 requesting expedient service.
The issue of service upon Kennedy and KA next arose at a conference before the court on November 14, 2007. The court noted then that plaintiff would have to request additional time to serve regardless of how service was to be accomplished because the 120-day period mandated by CPLR 306-b had expired. (Affirmation of Cary Samowitz in support of motion to dismiss, exhibit 3, at 20, lines 11-15.) Plaintiff never filed a motion for an extension of time for service.
On April 29, 2008, the court granted defendants’ motion to dismiss the complaint in its entirety. Plaintiff appealed the court’s decision and order, and the First Department reversed in part on January 14, 2010. On May 20, 2010, more than 120 days after the Appellate Division rendered its decision and, excluding the period during which plaintiffs appeal was pending, nearly a year and a half since filing the complaint, plaintiff filed his instant motion seeking expedient service on Kennedy and KA. Plaintiff still has not applied for an extension of the 120-day period mandated by the CPLR.
Plaintiff contends that he attempted service upon Kennedy in New York on several occasions with no success. Plaintiff thus appears to argue that reasonable diligence warrants an extension of time. However, plaintiff has not moved for an extension of time. Even if he had, plaintiff has not made a showing that would satisfy either the good cause or interest of justice standard — Kennedy lives in Great Britain, not New York. If plaintiff had wished to serve Kennedy in Great Britain within *502 the 120 days allowed by the CPLR, the Hague Convention offers a means of doing so. (Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, 20 UST 361, TIAS No. 6638 [1965].) Plaintiffs failure to even attempt compliance with the Hague Convention and failure to move for an extension of time disallows the relief he now seeks.
For the above reasons, the moving defendant’s motion to dismiss is granted, without prejudice, as to defendant Jason Kennedy.
II. Plaintiffs Motion for Leave to Amend
Plaintiff moves for leave to amend the complaint. Specifically, plaintiff wishes to withdraw his claims against defendant Joel Kandy, withdraw his claims for improper reduction of his salary, withdraw his claims of unjust enrichment and quantum meruit, increase the amount of damages under his claim for unpaid commissions and add a claim related to unearned commissions.
Defendants do not oppose plaintiff’s motion for leave to amend.
CPLR 3025 (b) liberally permits parties to amend pleadings by leave of the court, stating that “[a] party may amend his pleading ... at any time by leave of the court or by stipulation of all parties.” Although leave to amend can be denied, the court sees no reason to do so in the instant case.
III. Plaintiffs Motion for an Accounting
Plaintiff moves for an order directing defendants to account for certain funds. On June 19, 2007, the parties stipulated before the court that “no assets owned by any of the defendants that are in New York . . . will be transferred other than in the ordinary course of business without . . . ten business days notice to the client.” (Smith affirmation, exhibit D [June 19, 2007 hearing transcript], at 19, lines 7-15.) KES dissolved in February 2009. (Motion sequence No. 004, Samowitz affirmation, 11 7.) Plaintiff contends that, on account of KES’s dissolution and the above stipulation, defendants should be required to “provide an accounting for all transfers of funds for New York-based activities and ... be directed to deposit sufficient funds with the Court to satisfy a judgment in [Plaintiffs] favor.” (Smith affirmation If 15.)
Defendants argue that plaintiff demonstrates no basis for an accounting or for his request for an order directing defendants to deposit money with the court. Defendants further argue that *503 the stipulation expired upon the court’s dismissal of the action in 2008 and that plaintiff did not seek injunctive relief pending appeal, further precluding the relief he now seeks.
In order for the court to order an accounting, plaintiff must show a fiduciary relationship with defendants involving the entrustment of money or property, that no other remedy exists, and that plaintiff demanded and was refused an accounting. (Matter of Mary X.X., 33 AD3d 1066, 1068 [3d Dept 2006]; see also Kastle v Steibel, 120 AD2d 868, 869 [3d Dept 1986] [“In order to be entitled to an equitable accounting, plaintiff must prove a confidential relationship which induced him to entrust Steibel with money or property and that no adequate legal remedy exists”]; Sirico v F.G.G. Prods., Inc., 71 AD3d 429, 434 [1st Dept 2010] [finding that plaintiff musician lacked requisite fiduciary relationship with defendant music company to compel an accounting].)
It is well settled in New York law that at-will employment relationships do not create fiduciary relationships. (Rather v CBS Corp., 68 AD3d 49, 55 [1st Dept 2009].) Nor has plaintiff articulated any other theory upon which a fiduciary relationship with any of the defendants can be based. Moreover, plaintiff has not shown that he has no other remedy available. Rather, information about the financial activities of KES and KA will likely be obtainable in discovery. Plaintiff thus has not established his right to an accounting.
Plaintiff likewise has not articulated a proper basis upon which the court may direct defendants to deposit funds into the court to secure a possible judgment. Plaintiffs claims for unpaid commissions arise from his employment contract. However, in a “disputed contract action, the court may not direct payment into the court to provide a party with security for the satisfaction of a possible judgment.” (Renad, Inc. v Grana, Ltd., 127 AD2d 994, 995 [4th Dept 1987]; Salvatore & Catherine Pepe v Miller & Miller Consulting Actuaries, 221 AD2d 512, 513 [2d Dept 1995].)
Plaintiffs motion for an accounting and order directing defendants to deposit funds with the court is therefore denied.
Accordingly, it is ordered that defendants Kennedy Associates’ and Jason Kennedy’s motion to dismiss the complaint (motion sequence No. 005) is granted without prejudice as to Jason Kennedy; and it is further ordered that defendant Kennedy Associates’ and Jason Kennedy’s motion to dismiss the complaint (motion sequence No. 005) is denied as to Kennedy *504 Associates; and it is further ordered that plaintiffs motion for leave to amend the complaint (motion sequence No. 004) is granted; and it is further ordered that defendant Kennedy Associates shall answer the complaint within 20 days of notice of entry of this decision and order; and it is further ordered that plaintiffs motion is otherwise denied.

 Because the court grants plaintiff’s motion for leave to amend the complaint, Joel Kandy is not treated as a defendant herein.