ALBERT S. BRIGHAM, Appellant, *v.* FRANK W. McCABE et al., Respondents.

Third Department, December 30, 1966.

*Milton Paulson* and *Ralph W. Lawrence* for appellant.

*O'Connell & Aronowitz* (*Samuel E. Aronowitz* and *George Myers* of counsel), for National Commercial Bank & Trust Co., respondent.

*Charles A. Brind* and *John P. Jehu* for New York State Teachers' Retirement System and others, respondents.

*Per Curiam.* This is an appeal by the plaintiff from orders and judgments dismissing his complaint for failure to state a cause of action (CPLR 3211, subd. [a]).

For the purpose of such a motion to dismiss for failure to state a cause of action, the allegations of the pleading attacked are to be taken as true. However, pursuant to CPLR 3211 (subd. [c]), the parties may submit evidence as on a motion for summary judgment.

The complaint purports to plead one cause of action against all defendants in the nature of an accounting and for injunctive relief.

Although the New York State Teachers' Retirement System (hereinafter referred to as System) is named as a party defendant, the complaint alleges that the action is brought derivatively on its behalf. The pleading alleges that as of November 5, 1965 the System had assets of over $1,300,000,000, and that the members of the System were about 129,000 teachers. It also alleges that defendant Frank Wells McCabe was and is chairman of the finance committee of the System; that the finance committee is empowered to make purchases and sales of securities within the amount of money allocated by the Retirement Board (hereinafter referred to as board); that McCabe is president, chief executive officer and a shareholder of the defendant National Commercial Bank & Trust Co. of Albany, New York (hereinafter referred to as bank); that the bank has had balances of the System's money on hand as of June 30 in the years commencing 1957 to 1963 of several millions of dollars; that such cash balances were noninterest bearing; that such cash balances were excessive and unnecessary for the System; that such large deposits " serve only the private and selfish interests of [the] Bank "; that at the present time more than $190,000,000 is invested in conventional uninsured mortgages; that the bank " supervises the mortgage investments of [the] System and recommends the acceptance or rejection of mortgage applications "; that the bank has collected and continues to collect fees and commissions in connection with the handling of applications for such conventional uninsured mortgage loans; that the bank has at a profit sold and assigned such mortgages to the System; that the System

has sustained losses through the mismanagement of the bank in regard to the value of such mortgaged real property; that specifically the System did take a 30-year mortgage on real property of the Chase Manhattan National Bank in December of 1960 at 4% interest when the prevailing rates of interest were between 4½ and 5% per annum; that the last-mentioned mortgage was specifically recommended to System by bank through McCabe; that as of June 30, 1961 some $573,000,000 was invested in bonds and stocks on the advice of the bank which designated the broker or brokers who executed the buy and sell orders; and that the bank makes a profit on the designation of brokers to buy and sell securities since they are thereby induced to have business relationships with the bank.

The complaint demands judgment that the defendants, except the System, (a) be required to account for all losses and damages and that the bank account for all profits and benefits of such dealings; (b) that the bank be enjoined from holding on deposit any of the funds of the System as long as any of its directors, officers or employees are a member of the board; (c) that the bank also be enjoined from accepting any fees or commissions for recommending, selling, assigning and supervising mortgages; (d) that the bank be enjoined from acting as investment advisor to the System; (e) that purchase and sale of securities be conducted by the head of the Division of the Treasury, Department of Taxation and Finance.

It is apparent from a reading of the complaint that it was drawn on the basis of information obtained from the Insurance Department report of October 1, 1962 and a special report by the same department, dated December 20, 1965, but those reports are critical of the System based primarily on what appeared to be archaic methods of doing business in this modern and progressive age and the apparent failure of the System to strictly comply with the governing provisions of the Education Law. (See § 504, subd. 2, par. a; §§ 507, 508, subds, 1, 3.)

The defendants submitted various affidavits in support of the motion. The affidavit of Charles A. Brind alleges that section 504 of the Education Law requires that an executive of a bank be a member of the board so that there would be someone " who would not only have the banking background, but who would also have access to banking facilities." He further states that albeit the board listens to the counsel of McCabe, all actions are by majority vote; that " If it should appear that the bank because of the deposit of monies in its coffers has managed to salvage a few pennies, the financial benefit which the System has gained from the help of this bank makes these figures extremely small

by comparison with the assets of the System"; that to his knowledge the board has never had to foreclose a conventional mortgage and in all such cases the System has received its full principal and interest rates; that the board spreads the business of buying and selling securities among a list of brokers which it has; and that the bank holds money only for check writing purposes. The affidavit of Cornelius B. Murray as the Executive Secretary of the System states that to his knowledge the System has never purchased a mortgage from the bank; that the System has never paid any fees to the bank in regard to its mortgages; that at the present time smaller cash balances are retained in the bank; that the mortgage commitment for the Chase Manhattan National Bank referred to by plaintiff was made in 1956 at which time 4% was an excellent rate; and that there have been no losses on conventional mortgages. The affidavit of George Myers as an attorney for the bank alleges that since all of the dealings with the bank were open and approved by the majority vote of the board, the so-called "wages" were lawful; and that the fact that the bank has collected fees on mortgage applications is no basis for a cause of action and neither would be profits on sales or assignments of mortgages to the System.

In opposition to the motion the affidavits of Milton Paulson as an attorney for plaintiff were submitted. He alleges that there were many specific neglects in the mortgaging policies of the board; that according to a report of the auditor of the System the bank has handled the purchase and sale of securities; that according to another report of an auditor, McCabe personally prepared a list of security brokers and that such list was never adopted by the board; and that effective July 1, 1965 the cash funds were transferred to another bank.

The pertinent statutes considered on this motion were, among others, sections 504 (subd. 2) and 508 (subds. 1, 3) of the Education Law.

Subdivision 1 of section 508 provides in part as follows: "The members of the retirement board shall be the trustees of the several funds created by the article and shall determine from time to time what part of the moneys belonging to the retirement system shall be invested. When such board shall determine upon the investment of any moneys or upon the conversion or sale of any securities, it shall, by resolution duly adopted by a majority vote of the members of the board, direct the custodian to so invest the moneys or convert or sell the securities. Investments shall be made only in securities in which the trustees of a savings bank may invest the moneys deposited therein as provided by law."

Subdivision 3 of section 508 of the Education Law provides as follows: "Except as herein provided, no member nor employee of the retirement board shall have any interest direct or indirect in the gains and profits of any investment made by the board nor, as such, directly or indirectly receive any pay or emolument for his services. And no member nor employee of the said board directly or indirectly, for himself or as agent or partner of others, nor a corporation of which he is an officer, stockholder or member, shall borrow any of its funds or deposits or in any manner use the same except to make such current and necessary payments as are authorized by the board; nor shall any member or employee of said board become an endorser or surety or become in any manner an obligor for moneys loaned by or borrowed of the board."

Subdivision 2 of section 504 specifically provides that one member of the Retirement Board "shall be an executive officer of a bank authorized to do business in this state". The pleading and affidavits show that the defendant McCabe was an executive officer of the defendant bank.

Subdivision 1 of section 508 declares that all members of the board are *trustees* of the funds involved and subdivision 3 of section 508 prohibits the borrowing or using of funds by a corporation of which a board member is an officer, except to make payments as they are authorized by the board.

It appears on the face of the complaint that the bank used the funds of the System in violation of subdivision 3 of section 508 as quoted above. That these deposits amounted to a loan to the bank is seen in the general rule that the relationship between a bank and its depositor is that of debtor and creditor (*Sundail Constr. Co.* v. *Liberty Bank of Buffalo,* 277 N. Y. 137, 141. See 5 N. Y. Jur., Bank and Trust Companies, § 209). This rule has been applied to deposits by fiduciaries (*Matter of Holden,* 264 N. Y. 215. See 5 N. Y. Jur., Banks and Trust Companies, § 210), but such relationship alone does not support an action for an accounting (i.e., *Waller* v. *First Bank & Trust Co.,* 12 Misc 2d 497).

As to the members of the board, Special Term also found no cause of action. However, the pleading infers that there was a violation by them of subdivision 3 of section 508 inasmuch as they permitted the bank to have the use of the System's funds.

As to the allegations of the plaintiff relating to mortgages and investments, the affidavits in support of the motion to dismiss directly refute the generalization of such allegations and the affidavits in support of the complaint do not controvert such refutation.

An accounting will be ordered only where there is a fiduciary relationship between plaintiff and defendant and a charge of wrongdoing on the part of the defendant. (See *Schantz* v. *Oakman*, 163 N. Y. 148; *Hamilton* v. *Patrolmen's Benevolent Assn. of City of New York*, 88 N. Y. S. 2d 683 [Sup. Ct.] ; *Zamax Mfg. Co.* v. *Grossman*, 102 N. Y. S. 2d 833 [Sup. Ct.]. See, also, 1 N. Y. Jur., Accounts and Accounting, § 20.)

There existed between the trustees of the fund and the bank a fiduciary relationship, if for no other reason than because of the dual interest of McCabe, and it may be further spelled out from the complaint that there was not, because of the relationship, strict compliance with the Education Law. But there is no allegation in the complaint nor may it be fairly inferred that there was any wrongdoing— a requirement for an accounting— on the part of the trustees of the System, the bank or McCabe. The fact that the chief executive officer of this bank—McCabe acted as such since 1955—had since the inception of the Retirement System acted in such dual interest capacity only emphasizes our earlier reference to archaic practices. The essence of the complaint is premised upon a violation of the law because of such dual interest but that fact does not establish a wrongdoing in the sense that requires an accounting. A violation of a law is not such a wrongdoing as to mandate an accounting under the present circumstances. The mistake of law was not the kind of wrongdoing which should require the operation of '' The prophylactic rule that if a fiduciary misuses his trust for his own interests, he is accountable to the cestui for the gains '' (*Heller* v. *Boylan*, 29 N. Y. S. 2d 653, 697 [Sup. Ct.], affd. 263 App. Div. 815).

Thus, while a violation of subdivision 3 of section 508 has been proven, the only relief to which the plaintiff is entitled is the relief enjoining the bank from holding any deposits under the present circumstance.

The remaining arguments of the members of the board which are raised here for the first time in this proceeding are without merit.

Orders and judgments dismissing the complaint should be modified, on the law, so as to provide that such dismissal shall be without prejudice to the service of an amended complaint for judgment enjoining and restraining respondent the New York Teachers' Retirement System from depositing any of its funds with respondent National Commercial Bank and Trust Company, and restraining such bank from accepting or holding on deposit any of the funds of respondent Teachers' Retirement System, so long as any officer, director or employee of such bank is a

member of the Retirement Board of respondent Teachers' Retirement System, and, as so modified, should be affirmed. Settle order.

HERLIHY, REYNOLDS, AULISI and BRINK, JJ., concur; GIBSON, P. J., not voting.

Orders and judgments dismissing the complaint modified, on the law, so as to provide that such dismissal shall be without prejudice to the service of an amended complaint for judgment enjoining and restraining respondent the New York Teachers' Retirement System from depositing any of its funds with respondent National Commercial Bank and Trust Company, and restraining such bank from accepting or holding on deposit any of the funds of respondent Teachers' Retirement System, so long as any officer, director or employee of such bank is a member of the Retirement Board of respondent Teachers' Retirement System, and, as so modified, affirmed, with costs to appellant. Settle order.