■ PHYLLIS J. SIRICO et al., Appellants, v F.G.G. PRODUCTIONS, INC., Respondent. [896 NYS2d 61]—

Order, Supreme Court, New York County (Eileen Bransten, J.), entered August 22, 2008, which, to the extent appealable, denied plaintiffs' motion to renew a prior order granting defendant partial summary judgment, unanimously reversed, on the law, without costs, and the motion granted. Order, same court (Karla Moskowitz, J.), entered January 4, 2008, which, to the extent appealed from, granted defendant's motion for summary dismissal of the complaint, unanimously modified, on the law, without costs, the motion denied with respect to the first and sixth causes of action, those claims reinstated, and otherwise affirmed.

This action concerns music recordings from the 1960s featuring performances by the vocal group known as the Angels, including their well-known 1963 recording, "My Boyfriend's Back," which over the years has sold more than a million units in various formats. Defendant (FGG) produced the recordings. Plaintiffs commenced this action in 2005, alleging in the verified complaint and bill of particulars that in or about 1960, FGG entered into a written recording contract with the Angels, then composed of plaintiff Phyllis Allbut, suing here as Phyllis Sirico, her sister Barbara Allbut, and lead singer Linda Jansen.[1] In exchange for Sirico's performances on recordings that FGG produced and owned, plaintiffs allege that FGG agreed to pay her artist's royalties for sales of phonograph records and other products containing the recordings, and a share of FGG's income from licensing the use of the recordings by third parties. Plaintiffs state that they do not have a copy of the contract and do not know the specific method for calculating royalties.

In 1962, plaintiffs further allege, Jansen left the group, and plaintiff Peggy Davison, suing here as Peggy Davidson, replaced her as lead singer. Plaintiffs allege that Davidson never entered into a written or oral contract with FGG, but FGG's representatives told her she would be paid royalties, and provided her with a contract to that effect which was never executed.

Starting in 1963, plaintiffs performed for FGG as members of the Angels on "My Boyfriend's Back" and several other recordings. Their central allegation is that FGG has not paid them their full share of royalties and licensing income over the past 40-odd years. Davidson also claims that FGG exploited her image, voice and name to market the recordings without her consent.

The verified complaint purports to state the following causes of action: by Sirico, for breach of written contract; by Davidson,

---

1. The latter two persons are not parties to this action.

for breach of "implied contract"; and by Sirico and Davidson, for the equitable claims of unjust enrichment, an accounting, and, in the alternative, rescission. Finally, Davidson asserts a claim of violation of Civil Rights Law § 51. Defendant's answer counterclaimed against Sirico for costs arising from Davidson's claims, on the ground that Davidson performed at Sirico's behest.

Before discovery commenced, defendant moved for summary judgment dismissing the complaint and on its counterclaim. Defendant's principal, Richard Gottehrer, provided an affidavit that disputes most of plaintiffs' factual allegations. Gottehrer states that he formed FGG with his partners, Gerald Goldstein and Robert Feldman, in 1963, while they were working as staff songwriters for a music publisher. As aspiring record producers, the songwriters would, at their own expense, produce recordings of their songs performed by artists they had engaged, with the aim of selling the rights in the recordings to established record labels.

After composing "My Boyfriend's Back," Gottehrer and his partners asked the Angels to record it. According to Gottehrer, " 'The Angels' were the Allbut sisters [Sirico and her sister Barbara], who might be joined by such other vocalists as they engaged." Gottehrer alleges that by 1961, the Allbuts were performing and recording as the Angels along with Linda Jansen, who they described as their "employee," and who was in 1962 replaced by Davidson.

Gottehrer further alleges that when "My Boyfriend's Back" was recorded in 1963, the Allbuts were already parties to a March 1963 recording contract with a production company called Sabina Records, and a separate personal management contract with one Gerald Granahan.[2] Under the recording contract, the Allbuts had agreed to record exclusively for Sabina for a two-year term ending March 23, 1965, and in exchange for their performances they would receive specified royalties based on record sales, to be paid semiannually. Gottehrer states that the partners did not learn of the Sabina contracts until after they had recorded "My Boyfriend's Back" "on spec" and found a record label, Smash Records, which wanted to buy the rights to the recording.

At that point, Gottehrer continues, FGG "bought out" the Allbuts from the Sabina contract and from their management contract. Gottehrer denies that FGG ever entered into a rec-

---

**2.** It can be inferred from the record that Granahan was a principal of Sabina Records.

ording agreement with Davidson or purchased any agreement to which she was a party.

Gottehrer states that FGG had rendered royalty statements to the Allbuts until 1964, when they flatly refused to record any more for FGG In or about January 1965, Gottehrer claims, FGG's attorney notified the Allbuts' attorney that it was suspending the recording contract. Gottehrer also alleges that by late 1964, the Allbuts and Davidson were recording for another label under a different name, and later signed a recording contract as the Angels with still another label. He contends that their actions breached the exclusivity provision of their agreement and forfeited their rights to royalties for the FGG recordings.

As documentary evidence on the summary judgment motion, defendant submitted an incomplete and partially illegible copy of the Allbuts' contract with Sabina Records. It also submitted a letter, dated April 10, 1963, by which the Allbuts consented to the assignment to FGG of the Sabina Records contract and the personal management contract. The letter indicates that the Allbuts agreed that payment of $2,000 to Sabina and $1,000 to Sabina's owner would be deducted from the first royalties payable to them as FGG artists. Finally, defendant submitted biographies about, discographies of, and interviews with the Angels, which were obtained from various internet Web sites.

In opposition to the motion for summary judgment, plaintiffs submitted only their counsel's affirmation and a memorandum of law. In the January 2008 order, Supreme Court granted defendant's motion and dismissed the complaint, finding defendant had made a prima facie showing that it was entitled to judgment to which plaintiffs had offered virtually no opposition, since neither the affirmation nor the memorandum of law had any evidentiary value. The court also denied summary judgment to defendant on its counterclaim against Sirico, severed it, and directed that it continue.

In May 2008, plaintiffs moved for renewal and reargument,[3] contending that the allegations in Gottehrer's affidavit were conclusory and unsupported by any proof, and noting that defendant had moved for summary judgment before plaintiffs had the opportunity to conduct discovery. For those reasons, plaintiffs argued, they believed their factual allegations in the complaint and bill of particulars should have withstood the motion for summary dismissal.

---

**3.** A prior motion for renewal and reargument had been denied in April. Plaintiffs have not appealed that order.

In connection with their motion to renew, plaintiffs submitted "affidavits" witnessed by out-of-state notaries that were questionable as to proper form. Davidson states that she understood from representations by FGG's owners, including Gottehrer, that FGG would pay her the same royalties as the Allbuts for recording as a member of the Angels. According to Davidson, FGG had made one "negligible" royalty payment to each of the three women. Davidson adds that she never signed any agreement when joining the group and never signed any waiver or release of any of her rights, and claims that FGG used her voice, name and image to sell records. Davidson denied that the Angels ever refused to record for FGG

In a similar affidavit, Sirico states that all three women believed that as a member of the Angels, Davidson was entitled to FGG's royalties, and in fact FGG gave each of the women one royalty check. She denies having breached her contract by refusing to perform for FGG, and states that she recorded for another label only after the exclusivity period of the contract had expired.

Defendant opposed plaintiffs' motion and cross-moved for sanctions, contending that renewal should be denied because plaintiffs' affidavits did not contain any newly discovered evidence that could not have been submitted previously. Defendant also claimed that the affidavits were improper because the out-of-state notaries' acknowledgments did not state that plaintiffs' statements were sworn to in their presence.

The court held that the motion for reargument was untimely, and plaintiffs' affidavits in support of the renewal were deficient because they were unsworn, but in any event were insufficient to defeat defendant's prima facie showing. It noted that Davidson did not provide any details about the terms of her alleged contract with FGG, and held that plaintiffs had not justified their failure to submit admissible evidence to oppose the summary judgment motion, concluding that "[o]n this record—riddled with procedural mistakes and deficiencies—there is no reason for the Court to exercise its discretion and overlook plaintiffs' repeated oversights."

There is, of course, no appeal from denial of reargument. However, the denial of renewal is reversed. "Although renewal motions generally should be based on newly discovered facts that could not be offered on the prior motion (*see* CPLR 2221 [e]), courts have discretion to relax this requirement and to grant such a motion in the interest of justice" (*Mejia v Nanni*, 307 AD2d 870, 871 [2003]). While plaintiffs should have submitted admissible evidence to oppose the summary judgment mo-

tion, their failure is excusable. Defendant moved for summary judgment before plaintiffs had the opportunity to conduct discovery, and plaintiffs' counsel reasonably believed that defendant had failed to make a prima facie showing of entitlement to judgment.

FGG's claims that the Allbuts breached their contract are, at this stage, conclusory (see *JMD Holding Corp. v Congress Fin. Corp.*, 4 NY3d 373, 384-385 [2005] [a conclusory affidavit does not establish the prima facie burden of a proponent for summary judgment]). Gottehrer's claim that the Allbuts breached the exclusivity provision before March 25, 1965, which is the only circumstance under which they would have forfeited royalties, is based in part on hearsay.

Contrary to the renewal court's ruling, plaintiffs' affidavits are admissible. Each contains the affiant's statement that she was duly sworn and believes the affidavit's contents to be true and correct, and the notary's statement that the affiant personally appeared, proved her identity, and "did further acknowledge that she executed the foregoing for the purposes therein contained" (see *Feldman v Feldman*, 280 AD2d 276, 277 [2001]; *Collins v AA Truck Renting Corp.*, 209 AD2d 363 [1994] [notary "is presumed to have acted within his or her jurisdiction and carried out his or her duties as required by law"]).

Having granted leave to renew, we turn to the merits of the summary judgment motion. As a threshold matter, we find that plaintiffs' claims are not automatically barred by laches. While defendant contended it was prejudiced by plaintiffs' delay, it has not yet shown that the delay hampered its ability to defend against their claims (see *Commissioners of the State Ins. Fund v Ramos*, 63 AD3d 453 [2009]; see also *Continental Cas. Co. v Employers Ins. Co. of Wausau*, 60 AD3d 128, 137-138 [2008]).

Except for Sirico's claim for breach of contract and Davidson's claim for violation of the Civil Rights Law, all of the claims were properly dismissed on the grounds that they were time-barred, violated the statute of frauds, or failed to state a cause of action. Davidson's alleged implied contract for royalties would be unenforceable since any agreement to pay royalties extending beyond one year must be in writing to satisfy the statute of frauds (see *Melwani v Jain*, 281 AD2d 276 [2001]). Plaintiffs' unjust enrichment claims are time-barred by the six-year statute of limitations (see CPLR 213 [1]) because they accrued in the 1960s, when plaintiffs made the recordings for which they seek compensation (see *Petracca v Petracca*, 305 AD2d 566, 567 [2003]). Plaintiffs lack the requisite fiduciary relationship with FGG that is a predicate to an equitable claim for an accounting

(*see Brigham v McCabe*, 27 AD2d 100, 105 [1966], *affd* 20 NY2d 525 [1967]), although Sirico may be entitled to obtain accounting or royalty information through discovery. Finally, the equitable claim for rescission fails because plaintiffs have a complete and adequate remedy at law (*see Rudman v Cowles Communications*, 30 NY2d 1, 13 [1972]).

However, plaintiffs' affidavits, when read together with the complaint and bill of particulars, raise questions of fact as to whether FGG breached Sirico's contractual rights to royalties and violated Davidson's statutory protection against invasion of privacy. While the statute of limitations bars much of Sirico's breach-of-contract cause of action, her claim for royalties, if any, earned during the six years before this action was commenced, is viable at this preliminary stage, as it accrued each time FGG allegedly breached its recurring obligation (*see Bulova Watch Co. v Celotex Corp.*, 46 NY2d 606, 611 [1979]; *Beller v William Penn Life Ins. Co. of N.Y.*, 8 AD3d 310, 313-314 [2004]).

Davidson's claim under Civil Rights Law § 51 may also be viable, since the statute prohibits the use of a person's "name, portrait, picture or voice" for advertising or trade purposes without written consent, and it is undisputed that Davidson had no written contract of any kind with FGG (*see Harlock v Scott Kay, Inc.*, 14 AD3d 343, 344 [2005]). That claim survives only to the extent it concerns offending material published within one year of the date this action was filed (*see* CPLR 215 [3]; *Nussenzweig v diCorcia*, 9 NY3d 184 [2007]; *Costanza v Seinfeld*, 279 AD2d 255 [2001]). Although FGG argues that Davidson implicitly consented to the exploitation of her name and image by performing on the company's recordings, the requirement of a writing is explicit in the statute. FGG also alleges that it has never used Davidson's image and likeness since it assigned its rights in the Angels' recordings to Smash Records in 1963, but it fails to make a prima facie showing of that allegation. Concur—Tom, J.P., Saxe, Nardelli, Renwick and Freedman, JJ. **[Prior Case History: 2008 NY Slip Op 32333(U).]**

