12-759-cv
ABKCO Music & Records Inc. v. Chimeron LLC

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse,40 Foley Square, in the City of New York, on the 21ˢᵗ day of February, two thousand thirteen.

PRESENT:   GUIDO CALABRESI
             ROBERT D. SACK
             GERARD E. LYNCH,
                *Circuit Judges.*

_____

ABKCO MUSIC & RECORDS INC.,
             *Plaintiff-Counter-Defendant-Appellant*,

       v.                         No. 12-759-cv

CHIMERON LLC,
             *Defendant-Counter-Claimant-Appellee*,

_____

FOR APPELLANTS:     MICHAEL BARRIE KRAMER, Michael B. Kramer & Associates, New York, N.Y.

FOR APPELLEES:      BARRY I. SLOTNICK, Loeb & Loeb LLP, New York, N.Y.

Appeal from the United States District Court for the Southern District of New York (William H. Pauley, III, *J.*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court is AFFIRMED.

Appellant ABKCO Music & Records Inc. ("ABKCO") initiated this action in the district court on April 12, 2010, seeking a declaration that, as of December 31, 2008, it was not indebted to Chimeron LLC ("Chimeron") under a series of recording and distribution agreements entered into in the 1960s by the music group Herman's Hermits ("the Hermits"), record producers Mickie Most and Reverse Producers Corp. ("Reverse"), and distributor MGM Music & Records, Inc. ("MGM"). Chimeron counterclaimed, seeking damages for breach of contract. The claims proceeded to trial and, on February 1, 2012, the jury rendered a verdict in favor of Chimeron, finding ABKCO liable for breach of contract and awarding $150,000 in damages. The district court accordingly entered judgment for Chimeron on February 10, 2012, in the amount of $150,000 plus interest. ABKCO now appeals, raising numerous objections to the proceedings below. We assume the parties' familiarity with the underlying facts and procedural history.

ABKCO argues, first, that the district court erred when it denied a pre-trial motion to prohibit Chimeron from introducing evidence relating to royalty payments allegedly owed prior to October 6, 2002. According to ABKCO, any such evidence would be relevant only to claims barred by New York's six-year statute of limitation for contract actions. See N.Y. C.P.L.R. § 213(2). The district court denied the motion, explaining that "the royalty agreement is silent as to the timing of the parties' performance," and therefore requires performance within a "reasonable time." (A 144.) Because "[d]etermining what constitutes

2

a reasonable time for performance requires consideration of [several] factors," and is therefore a "fact-intensive inquiry," the district court concluded that it was "not appropriate for resolution on a motion in limine." (Id.)

"We review a district court's evidentiary rulings for abuse of discretion, and will reverse only for manifest error." Cameron v. City of New York, 598 F.3d 50, 61 (2d Cir. 2010) (internal quotation marks omitted). A district court abuses its discretion when "(1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision – though not necessarily the product of a legal error or a clearly erroneous factual finding – cannot be located within the range of permissible decisions." Zervos v. Verizon N.Y., Inc., 252 F.3d 163, 169 (2d Cir. 2001) (footnotes omitted). ABKCO claims that the district court's denial of its motion in limine was an abuse of discretion for two reasons. Both are without merit.

First, ABKCO maintains that the ruling was premised on an erroneous factual finding, namely that the May 31, 1966 agreement between MGM and the Hermits, which the parties refer to as the "Frimp Agreement," specified no time for performance. ABKCO points out that the Frimp Agreement expressly requires semi-annual royalty payments. ABKCO misconstrues the district court's ruling, which referred not to the "Frimp Agreement," but to the "royalty agreement." The "royalty agreement" was a term defined in Chimeron's opposition to the motion in limine to mean the Hermits' November 23, 1964 agreement with Mickie Most ("Artist Agreement"), as amended by agreement on May 21, 1966 ("Amendment Agreement"). Neither the Artist Agreement nor the Amendment Agreement

3

specified a time for performance. ABKCO argues that, nonetheless, the Frimp Agreement was the only agreement relevant to the dispute, as ABKCO had succeeded to MGM's rights and interests under that agreement. This argument is not supported by the record, which shows that MGM never owned the Hermits' recordings, but distributed them pursuant to a limited license that expired by the terms of its 1964 and 1966 agreements with Reverse, and its 1975 settlement with Allen Klein, ABKCO's former principal, and various ABKCO entities. MGM therefore had no outstanding rights or obligations to which ABKCO could succeed. More importantly, ABKCO maintained throughout the proceedings below that it was successor to Reverse, which was in turn successor to Most. Therefore, the Artist and Amendment Agreements, to which Most and Reverse were parties, rather than the Frimp Agreement, to which MGM was a party, appear to govern the current relationship between ABKCO and Chimeron. Accordingly, the district court's finding that "the royalty agreement is silent as to the timing of the parties' performance" (A 144) is not clearly erroneous.

ABKCO next argues that evidence pertaining to the question of "reasonable time for performance" should not have been presented to the jury because "waiting nearly forty (40) years to demand performance is far too long under any set of facts." (Appellant's Reply Br. 19.) ABKCO forgets that Chimeron complained not of a single injury dating back to the 1960s, but of ABCKO's alleged failure to pay royalties earned on sales occurring over a number of decades beginning in the 1960s, but lasting until the present day. The jury was entitled to find that ABKCO was obliged to make payments that came due periodically during that time, and each failure to pay would constitute a separate breach. See Sirico v.

4

F.G.G. Productions, Inc., 896 N.Y.S.2d 61, 66 (1st Dep't 2010) ("While the statute of limitations bars much of Sirico's breach-of-contract cause of action, her claims for royalties, if any, earned during the six years before this action was commenced, is viable at this preliminary stage, as it accrued each time FGG allegedly breached its recurring obligation."); Beller v. William Penn Life Ins. Co. of N.Y., 778 N.Y.S.2d 82, 85 (2d Dep't 2004) ("'[W]here a contract provides for continuing performance over a period of time, each breach may begin the running of the statute anew such that accrual occurs continuously and plaintiffs may assert claims for damages occurring up to six years prior to the filing of the suit.'"), quoting Airco Alloys Div. v. Niagara Mohawk Power Corp., 430 N.Y.S.2d 179, 186 (4th Dep't 1980).

Even assuming arguendo that forty years was an unreasonable time for performance as a matter of law, not all of the royalties Chimeron claimed it was owed would necessarily have become due prior to October 6, 2002.[1] In order to grant ABKCO's motion and preclude all evidence pertaining to claims that accrued prior to October 6, 2002, the court would have had to determine which alleged payment obligations reasonably should have been made before that date. That, in turn, would have required a fact-intensive inquiry into "the facts

---

[1]ABKCO notes that the jury's selection of 1988 as a reasonable intermediate date indicates that the jury awarded damages for claims accruing at least as early as 1988, if not earlier, which is well outside the limitation period. However, ABKCO has never argued, either below or on appeal, that it is entitled to a new trial because of the jury's selection of 1988 as the intermediate date, and neither party objected to the district court's intermediate date instruction, even though that instruction appears to have allowed recovery of royalties accruing at least as far back as 1973. Rather, ABKCO cites the jury's selection of the 1988 date only in support of its argument that the district court should have granted its motion in limine.

5

and circumstances of the . . . case," including "the nature and object of the contract, the previous conduct of the parties, the presence or absence of good faith, the experience of the parties and the possibility of prejudice or hardship to either one." Ben Zev v. Merman, 73 N.Y.2d 781, 783 (1988). The district court did not err by refraining to decide this question as a matter of law prior to trial and instead allowing the jury to hear evidence relevant to its resolution.

All but one of ABKCO's remaining arguments on appeal concern the district court's jury instructions. "We review jury instructions as a whole to determine if they provide a misleading impression or inadequate understanding of the law, and will reverse on this basis only if the appellant[] can show that in viewing the charge given as a whole, [it was] prejudiced by the error." Schwartz v. Liberty Mut. Ins. Co., 539 F.3d 135, 147 (2d Cir. 2008) (internal quotation marks, citations and brackets omitted). ABKCO's first complaint with respect to the charge is that the district court erred when it told the jury that

> in an action based on a mutual, open, and current account, where there have been reciprocal demands between the parties, the time within which the action must be commenced is computed from the time of the last transaction in the account on either side. A mutual, open, and current account exists if there is an express or implied agreement between two parties to set off their mutual debts against each other, and that such an account was kept.

(A 1362.) ABKCO argues that this instruction was misleading because it suggested that the jury could find a mutual, open and current account even though the evidence could not support such a finding. The instruction is an accurate statement of New York law, see N.Y. C.P.L.R. § 206(d), under which a mutual, open and current account exists where the parties

6

have entered into "an express or implied agreement for a set-off of mutual debts." Seaboard Coast Line R.R. Co. v. Long Island R.R. Co., 595 F.2d 96, 100 (2d Cir. 1979). "That is, goods are delivered upon the one side to off-set or to be credited upon goods delivered upon the other side, the account being permitted to run for mutual convenience, and the balance to be paid by the party against whom, upon final adjustment, it shall be found to exist." Green v. Disbrow, 79 N.Y. 1, 14 (1879). Chimeron was entitled to the instruction as long as there was "some evidence supporting the theory behind the question so that a question of fact [could] be presented to the jury," Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994). Chimeron introduced such evidence at trial. It identified both debits and credits in ABKCO's royalty statements. ABKCO argued that the alleged debits – including a nearly $6,500 charge to Chimeron – were not in fact debits, but were corrections of accounting errors or reflected returned records. Given this dispute, whether there was a mutual, open and current account was a question of fact, and the district court did not err by submitting it to the jury.

ABKCO next objects to the district court's statement to the jury that there was a contract between ABKCO and Chimeron. According to ABKCO, the court should instead have charged that ABKCO was the successor in interest to MGM. As already explained above, the evidence in the record does not establish that ABKCO succeeded to the rights and obligations of MGM as a matter of law. Accordingly, the court's instruction was in keeping with the evidence.

ABKCO raises one final objection to the jury instructions. It argues that the court misled the jury when it explained that a "reasonable time for performance" should be

7

assessed in light of "at least the following factors: (1) the nature and object of the contract; (2) the previous conduct of the parties; (3) the presence or absence of good faith; and (4) the experience of the parties and the possibility of prejudice or hardship to either one." (A 1362.) ABKCO did not raise this objection below, and it may therefore be reviewed only for plain error "'if the error affects substantial rights,'" John Wiley & Sons, Inc. v. Kirtsaeng, 654 F.3d 210, 223 (2d Cir. 2011), quoting Fed. R. Civ. P. 51(d)(2). Because the challenged instruction does not "contravene an established rule of law," id. (internal quotation marks omitted), but rather correctly states New York law, see Ben Zev, 73 N.Y.2d at 783, it does not constitute plain error.

Finally, ABKCO argues that the district court should not have awarded Chimeron prejudgment interest. The district court explained to the jury that "[t]he purpose of awarding damages in breach of contract cases is to place the nonbreaching party in as good a position as it would have been had the contract been performed." (A 1359.) From this, ABKCO infers that the jury accounted for interest in its $150,000 damages award. The argument is unconvincing.

In New York, "[i]nterest shall be recovered upon a sum awarded because of a breach of performance of a contract." N.Y. C.P.L.R. § 5001(a). Under this provision, "prejudgment interest is recoverable as of right," and should be added to the jury award unless "there is a possibility that the jury award already allowed interest." Trademark Research Corp. v. Maxwell Online, Inc., 995 F.2d 326, 342 (2d Cir. 1993). This exception applies only when there is a concrete basis for believing that the jury has in fact accounted not only for the

8

plaintiff's lost assets but for use of those assets during the time between injury and recovery. For example, in <u>Bamira v. Greenberg</u>, the jury found that the defendant had misappropriated the plaintiff's opportunity to purchase stocks and awarded compensatory damages equal to the value of the stock on the date of the verdict. 744 N.Y.S.2d 367, 368 (1st Dep't 2002). Because the jury's award was equal to the much appreciated, post-verdict value of the stock and therefore clearly contemplated the plaintiff's inability to benefit from the stock during the course of litigation, the Appellate Division vacated an award of prejudgment interest, which, "under the circumstances, would constitute a windfall double recovery." <u>Id</u>. at 369.

Similarly, we concluded in <u>Trademark Research Corp. v. Maxwell Online, Inc.</u> that the plaintiff was not entitled to interest where a witness presented the jury with a calculation of damages that included a computation of interest. 995 F.2d at 342. We held that "this portion of [the witness's] testimony . . . amounted to a request for the type of interest contemplated by CPLR 5001(a)." <u>Id</u>. New York appellate courts have reached similar holdings where juries were explicitly instructed to consider interest in calculating damages awards. <u>See</u>, <u>e.g.</u>, <u>Flores v. Citizens Int'l Bank</u>, 640 N.Y.S.2d 746, 746 (1st Dep't 1996) ("Since the jury was instructed to consider interest in its deliberations as to damages and the verdict was in excess of the loan principal, the trial court properly found plaintiffs were not entitled to prejudgment interest."); <u>Men's World Outlet, Inc. v. Estate of Steinberg</u>, 476 N.Y.S.2d 171, 172 (2d Dep't 1984) ("[T]he trial court . . . did charge the jury as to interest. Thus, inasmuch as there is a possibility that the jury had already allowed interest . . . the court erred in granting plaintiff interest . . . .").

ABKCO has identified nothing in the record to suggest that the jury contemplated an award of prejudgment interest. It admits that the district court did not mention interest in its instruction. A routine instruction that damages are intended to make a plaintiff whole, without more, does not displace a plaintiff's statutory entitlement to prejudgment interest.

We have considered ABKCO's remaining arguments on appeal and find them to be without merit. Accordingly, and for the reasons stated above, the judgment of the district court is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

10