OPINION OF THE COURT
Kristin Booth Glen, S.
Heather Aldrich Contreras, alleged non-marital great-granddaughter of grantor Lydia Butler Dwight, moves pursuant to CPLR 2221 (e) for leave to renew the order of this court dated April 12, 2011 that construed the phrase “lawful issue” in grantor’s trust instrument to exclude non-marital children from the class of beneficiaries. Heather was duly cited but did not appear on the original application brought by successor co-trustee JP Morgan Chase Bank, N.A. Chase sought advice and direction as to the construction of the phrase “lawful issue” in the trust created by grantor under an agreement dated July 13, 1971, as amended. Heather seeks leave to renew on the ground that, although she received the citation, she did not appear in the proceeding because of erroneous advice of her California counsel. She states that after she received the decision she was initially prevented by her financial situation from hiring New York counsel to move to renew on her behalf.
Motion for Leave to Renew:
The court exercises its discretion to grant Heather’s motion for leave to renew, in the interests of justice (see e.g. Sirico v F.G.G. Prods., Inc., 71 AD3d 429, 433 [1st Dept 2010]), finding that Heather has shown reasonable justification for her failure to appear and present these facts in response to Chase’s application (see e.g. Bustamante v Green Door Realty Corp., 69 AD3d 521 [1st Dept 2010]). For the reasons discussed below, upon renewal the court adheres to its original decision and order dated April 12, 2011.
Background:
Chase brought a petition for advice and direction in interpreting the phrase “lawful issue” in the 1971 trust instrument, as thereafter amended, in which grantor provided for distributing net income from the trust to her lawful issue per stirpes. Grantor had three children, Maitland Sr., Jacqueline and Robert. Jacqueline and Robert each receive one third of the net income from the trust. Maitland Sr. is deceased so his one third of the income was, until recently, distributed to his three children, Mary, Margaret and Maitland Jr., who each received one ninth *582 of the total distribution. Maitland Jr. died and the question before the court was whether his alleged non-marital child, Heather, should receive Maitland Jr.’s one-ninth share of the net income.
Motion to Renew — New Facts:
Heather submits a motion to renew with evidence that she is Maitland Jr.’s daughter, including affidavits to that effect from both Mary and Margaret, her paternal aunts.[1] Heather also submits a copy of her birth certificate listing Maitland Jr. as her father,[2] photos, letters, a copy of the will of Maitland Sr. specifically naming Heather as a granddaughter and beneficiary, and a copy of the will of Maitland Jr. naming Heather as his daughter, executor and a beneficiary. This evidence, if believed, would doubtless qualify Heather as legitimate for purposes of intestacy pursuant to EPTL 4-1.2 (a) (2) (C).
The Law:
The April 12, 2011 decision held that use of the term “lawful issue” in the trust instrument is indicative of an intent to exclude non-marital children, relying on Matter of Kane (130 Misc 2d 282 [Sur Ct, Nassau County 1985]) and Matter of Ryan (NYLJ, Nov. 12, 1996 at 30, col 1 [Sur Ct, NY County]). The plain meaning of “lawful” cannot be disregarded as a modifier of the term “issue.” In Matter of Hoffman (53 AD2d 55 [1st Dept 1976]), the Appellate Division, while establishing a rebuttable rule of construction that the word “issue” standing alone included both marital and non-marital children, distinguished “issue” from “issue” modified by “lawful,” which it stated does not include non-marital children.
“Lawful” may, however, have a meaning other than “marital,” as suggested in footnote one to the April 12th decision, which reads:
“The result may have been different had the child’s parents acknowledged paternity pursuant to Public Health Law § 4135-b [1] [a] or Social Services Law § 111-k. Such acknowledgment has the ‘same force and effect as an order of paternity or filiation issued by a court of competent jurisdiction’ (Public Health Law § 4135-b [3] [a]), and so arguably makes the association ‘lawful.’ ”
*583 An acknowledgment of paternity is intended by the legislature “to determine a person’s legal father” (see Sobie, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 511 at 9 [2009 ed] [emphasis added]). Acknowledgment of paternity, like filiation, results in both an obligation of support toward the child, and reciprocal inheritance rights pursuant to our intestacy statute, EPTL 4-1.2 (a) (2) (B), as well as issuance of a birth certificate showing the now legitimatized child’s father’s name. A non-marital birth father can thus make his child “legal,” by his and the mother’s affirmative act, during their lifetimes.
The Court of Appeals has recognized that if the legislature “legitimatizes” children born out of wedlock by a specific statute, such children should be deemed “lawful issue” for purposes of that term when used in a will (see Olmsted v Olmsted, 190 NY 458 [1908]). In Matter of Vought (29 AD2d 97, 104 [1st Dept 1967]), the First Department applied the principle to trust instruments, holding that when a statute in effect at the time a trust is established legitimatizes a non-marital child, the grantor’s use of the term “lawful issue” must be deemed to include a child who falls within that statute.
The statute at issue in Vought was section 1135 of the Civil Practice Act, which provided that, in annulment actions, children of void or voidable marriages might be considered legitimate. The Court noted the legislative purpose as “protecting children born illegitimate, and providing ways to make them legitimate, thereby giving them rights similar to children born legitimate” (Vought, 29 AD2d at 103). This is precisely the purpose and effect of Public Health Law § 4135-b (1) (a) and Social Services Law § 111-k.
Citing Matter of Park (15 NY2d 413 [1965]), the Court in Vought observed,
“under New York policy, a legitimatized child . . . ‘has exactly the same “legal relation” to the parents as a natural child. In the absence of an explicit purpose stated in the . . . trust instrument to exclude such a child, he must be deemed included, whether the word “heir”, “child”, “issue” or other generic term expressing the parent-child relationship is used’ ” (Vought, 29 AD2d at 103 [emphasis added]).
It seems clear, therefore, that at any given time, courts may construe testamentary or trust language as to “lawful” *584 heirs, descendants, etc. as including children born out of wedlock but legitimatized by statute.
In expanding the classes of persons who may take, the statutes, and the cases relying on them, have been premised on the rationale of Vought that a grantor is presumed to know the law in effect at the time the trust is created. Under that rationale, persons legitimatized by acknowledgments of paternity would not benefit in the instant case, as both Public Health Law § 4135-b (1993) and Social Services Law § 111-k (1985) were enacted substantially after the grantor’s trust was created in 1971. Applying the presumed to have known rationale is thus of no help to the movant here.
There is, however, another way of thinking about statutory legitimization and construction of the term “lawful” relating to issue, heirs, descendants, etc. The presumed to have known scenario is, clearly, a fiction,[3] which may or may not actually apply in individual cases, though it is far more likely that the term “lawful” is simply boilerplate, a phrase used routinely by the drafter in documents, often without explanation.
It is possible, however, to imagine a different but equally (if not more) likely conversation, in which the grantor or testator tells her attorney that she wants her property to pass to her children and their children (and so on), but also wants to avoid the expense, unpleasantness and uncertainty of a contest, or judicial determination as to who is, and who is not among the objects of her bounty. Use of the term “lawful,” then, would include anyone who, at the time the trust is distributable (or, in the case of a will, on the date of the testator’s death), was already legitimatized on whatever grounds the legislature might have deemed appropriate.
This second scenario is at least as likely — and as compelling — as the first, especially because the simple, well-known phrases “born in wedlock” or “marital” were and are clearly available to a drafter whose client wishes to limit the distribution of her wealth to those who have remained within certain societal constraints.
Under the second, promoting certainty/avoiding litigation rationale for construction of the term “lawful,” compliance, *585 during life, by the parents of a non-marital child with the Public Health Law or Social Services Law (or, equally, by an order of filiation under article 5 of the Family Court Act) would result in that child’s inclusion among permitted “lawful” beneficiaries as suggested by footnote one in the prior opinion. That rationale is, however, of no use to Heather, whose claim to lawful status depends on a potentially contested[4] determination of legitimacy under EPTL 4-1.2 (a) (2) (C). Compelling as her so-far unchallenged evidence may be, it still requires adjudication. Rather than legitimatized, which might bring her within the grantor’s intended beneficiaries, she is merely potentially legitimatizable.
Accordingly, under any arguable basis for expanding interpretation of the term “lawful issue” beyond marital children, Heather’s contentions must fail. While her evidence, if believed, would permit her to take as a distributee in intestacy, this is not an intestate estate. It is a trust, and the grantor’s intent, as judicially construed under existing case law, precludes a finding that she is the “lawful issue” of Maitland, Jr. as previously decided.
Accordingly, the share of income previously payable to Maitland Dwight Jr. is payable in equal shares to his two sisters, Mary Dwight Spore and Margaret Dwight Olson, as of the date of his death.

. Since Maitland Jr. has no other heirs and the trust income is distributed per stirpes, unless Heather is found to be lawful issue, Mary and Margaret split Maitland Jr.’s share of the income, so as their affidavits are against interest, they are particularly persuasive.

. This is not, of course, proof of paternity, but may be considered with all the other evidence.

. In this fiction, either the testator/grantor is fully familiar with and/or knowledgeable about all the laws in New York that define or confer legitimacy — a fairly unlikely possibility — or we presume a conversation between the testator/grantor and the attorney drafter about how the term “lawful” will be or is likely to be construed in light of existing statutory law.

. While the two other recipients of Maitland Sr.’s one-third share, Heather’s paternal aunts, consent to a construction in which she takes one ninth of the trust income, their children, who are remainder beneficiaries, have not so agreed. In addition, the grantor’s living children, Jacqueline and Robert, submitted a letter on the original petition taking the position that “lawful issue” excluded non-marital children.