OPINION OF THE COURT
Joseph C. Teresi, J.
From approximately April 2002 to June 2003, plaintiff suffered from hydrocephalus. He is now 13 years old and commenced this medical malpractice action, by his mother, seeking damages due to defendants’ alleged failure to diagnose and treat his hydrocephalus. Issue was joined and, although a note of issue has been filed, limited discovery continues. A trial date certain has been set (Oct. 6, 2014).
A discovery dispute has now arisen. On October 8, 2013, the parties appeared before the court pursuant to paragraph 11 of the scheduling order of April 17, 2012 which provides:
“If there is a discoveiy issue (at any time), the parties agree as follows:
“To comply with 22 NYCRR 202.07 to resolve the dispute and if it cannot be resolved, then to immediately telephone chambers and schedule a conference on a date convenient to all counsel for the purpose of resolving the discovery dispute. Every effort shall be made to select a date convenient to all counsel.
“At least two days before the conference, each party shall deliver to the Court a statement outlining the dispute and stating its position.”
At the conference on October 8th, each party provided submissions and was heard on the record. The discovery issues are the defendants’[1] requests for: (1) authorizations signed by plaintiffs biological mother and father to obtain their respective medical and educational records, and (2) an order requiring the infant plaintiff to undergo genetic testing. Plaintiff opposed defendants’ applications. Because defendants failed to establish their *293 entitlement to any of the relief they seek, their requests are denied.
Plaintiffs Mother’s Medical Records
“Where a mother sues only in a representative capacity as parent and natural guardian of an infant, she ‘does not thereby place her own medical history in issue and waive her physician-patient privilege.’ ” (Schaner v Mercy Hosp. of Buffalo, 15 AD3d 997, 998 [4th Dept 2005], quoting Sibley v Hayes 73 Corp., 126 AD2d 629, 630 [2d Dept 1987]; Farkas v Orange Regional Med. Ctr., 97 AD3d 720 [2d Dept 2012].) Because plaintiffs mother commenced this action in a representative capacity only, she has not placed her own medical history in issue. As such, defendants are not entitled to her medical authorization.
Accordingly, defendants’ request for an authorization to obtain plaintiffs mother’s medical records is denied.
Plaintiffs Mother’s Educational Records
Educational records are “of a confidential and private nature.” (Ward v County of Oneida, 19 AD3d 1108, 1109 [4th Dept 2005], quoting McGuane v M.C.A., Inc., 182 AD2d 1081, 1082 [1992].) “[T]hey are not discoverable unless the party seeking their production establishes their relevance and materiality for discovery purposes.” (Helmer v Draksic, 38 AD3d 1297, 1298 [4th Dept 2007], quoting McGuane v M.C.A., Inc. at 1082; Monica W. v Milevoi, 252 AD2d 260 [1st Dept 1999].)
On this record, defendants failed to establish the “relevance and materiality” of the additional educational records they seek to obtain from plaintiff’s mother. Plaintiff’s mother, as is uncontested, provided defendants with authorizations to obtain proof of her nursing degree and current college enrollment. According to defendants’ counsel, these authorizations are insufficient. Defendants seek additional authorizations to obtain “transcripts or other relevant educational documents.” Defendants, however, offered no proof that their vocational expert requires such documentation to render an opinion. Instead, defendants justify their demand by opining that plaintiff’s vocational expert based his report on them. Such assertion, however, is not supported by the record. Plaintiffs vocational expert’s opinion was based, in part, upon plaintiffs mother’s “level of education” as “reported” by her. Such vocational expert opinion did not state, or imply, that it was based upon an analysis of plaintiffs mother’s educational records underlying *294 her nursing degree or her current transcripts. Because defendants already have proof of plaintiffs mother’s nursing degree and college enrollment, i.e., her “level of education,” they possess the documentation upon which plaintiff’s vocational expert’s opinion is based. As such, defendants made no showing that plaintiffs’ mother’s “transcripts or other relevant educational documents” are relevant or material.
Accordingly, defendants’ request for an authorization to obtain plaintiffs mother’s educational records is denied.
Plaintiffs Father’s Medical and Educational Records
Plaintiffs father is a nonparty, requiring defendants to serve him with a subpoena duces tecum to obtain an authorization for his medical and educational records. (CPLR 3120, 3121, 3101 [a] [4]; Patrick M. Connors, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 3120:12; Ruiz u City of New York, 125 AD2d 661 [2d Dept 1986]; Van Epps v County of Albany, 184 Misc 2d 159, 163 [Sup Ct, Albany County 2000].) Such subpoena must be served in the same manner as a summons. (CPLR 2303 [a]; Matter of Jaggars v Scholeno, 6 AD3d 1130 [4th Dept 2004].)
On this record, defendants wholly failed to comply with CPLR 3120 and 2303. Defendants support this application with no proof that they caused plaintiff’s father to be served with a subpoena duces tecum or with this application. Defendants’ counsel alleges that he sent plaintiff’s father a single letter requesting authorizations, and offered no affidavit of service for such letter. Such proof is insufficient to compel disclosure from a nonparty.
Accordingly, defendants failed to demonstrate their entitlement to plaintiffs father’s medical or educational records, and their application is denied.
Genetic Testing of Plaintiff
Defendants seek to use genetic testing in this action to sever the causal chain which links their alleged malpractice and plaintiff’s injuries. According to defendants’ counsel, he is pursuing “genetic testing to determine [i]f there are genetic markers present demonstrating a genetic basis for the condition in this infant [plaintiff].” Specifically, defendants’ counsel opines that plaintiff’s behavioral issues and learning disabilities are the result of his genetics, and therefore not caused by his hydrocephalus. This proposed use of genetic testing is, in the New York State courts, unprecedented.
*295 “The advent of DNA technology is one of the most significant scientific advancements of our era. The full potential for use of genetic markers in medicine and science is still being explored, but the utility of DNA identification in the criminal justice system is already undisputed.” (Maryland v King, 569 US —, —, 133 S Ct 1958, 1966 [2013]; People v Wesley, 83 NY2d 417 [1994].) Its utility for proving or disproving identity in the civil context has, to a lesser extent, also been acknowledged. (Matter of Poldrugovaz, 50 AD3d 117 [2d Dept 2008]; LaVallee v State of N.Y. Off. of Children & Family Servs., 182 Misc 2d 58, 60 [Sup Ct, Dutchess County 1999].)
Within such context, numerous courts have compelled genetic testing in civil discovery disputes for identity related issues. (Matter of Poldrugovaz [identity of father]; Matter of Betz, 74 AD3d 1459 [3d Dept 2010] [same]; Matter of Gaynor, 13 Misc 3d 331, 333 [Sur Ct, Nassau County 2006] [identity of mother]; Matter of Derrick H. v Martha J., 82 AD3d 1236, 1239 [2d Dept 2011] [identity of father]; McGrath v Nassau Health Care Corp., 209 FRD 55 [ED NY 2002] [identity of an individual’s bodily fluid allegedly left on a blanket]; D’Angelo v Potter, 224 FRD 300 [D Mass 2004] [identity of an individual’s bodily fluid allegedly left in a specified location]; cf. Harris v Athol-Royalston Regional Sch. Dist. Comm., 206 FRD 30 [D Mass 2002] [identity of an individual who mailed a letter]; LaVallee v State of N.Y. Off. of Children & Family Servs. [identity of an individual’s bodily fluid left in a specified location].)
Here, however, identity is not at issue. Rather, defendants seek to use genetic testing to controvert plaintiffs causation proof. This court’s research identified no prior case on point. Nor have the parties offered any case law supporting their respective positions on this issue.
With no precedent controlling defendants’ genetic test demand, CPLR 3101 (a) provides the general statutory authority applicable to defendants’ demand.
“CPLR 3101 (a) entitles parties to full disclosure of all matter material and necessary . . . The test is one of usefulness and reason ....
“Under our discovery statutes and case law, competing interests must always be balanced; the need for discovery must be weighed against any special burden to be borne by the opposing party.” (Andón v 302-304 Mott St. Assoc., 94 NY2d 740, 746-747 [2000], quoting Allen v Crowell-Collier Publ. Co., 21 *296 NY2d 403, 406 [1968], and Kavanagh v Ogden Allied Maintenance Corp., 92 NY2d 952, 954 [1998] [internal quotation marks omitted]; Matter of Poldrugovaz; LaVallee v State of N.Y. Off. of Children & Family Servs.)
Considering first the vast amount of personal and private information unspecified genetic testing reveals, the genetic testing defendants seek imposes a special burden on plaintiff.
As succinctly recognized by the legislative history that led to the DNA Analysis Backlog Elimination Act (42 USC § 14135a):
“[t]he information obtainable from DNA testing surpasses any previous types of testing available. The amount of personal and private data contained in a DNA specimen provides insights into the most personal family relationships and the most intimate workings of the human body, including the likelihood of the occurrence of over 4,000 types of genetic conditions and diseases. Genetic information pertains not only to the individual whose DNA is sampled, but also to anyone who shares that bloodline.” (HR Rep 106-900[I], 106th Cong, 2d Sess, available at 2000 WL 1420163, *52 [Leg. Hist.]; see also Centers for Disease Control and Prevention, http://www.cdc.gov/genomics/gtesting/ [accessed Nov. 1, 2013] [stating “(g)enetic tests have been developed for more than 2,200 diseases”]; Centers for Disease Control and Prevention — Office of Public Health Genomics, http://www.cdc.gov/genomics/ gtesting/tier.htm#tierl [accessed Nov. 1, 2013] [listing 48 Genomic “Test/Application(s)” separated into three evidence based categories].)
The vast scope of information accessible by genetic testing, and its potential misuse, was also recognized by Congress when it passed the Genetic Information Nondiscrimination Act of 2008. (Pub L 110-233, 122 Stat 881 [110th Cong, 2d Sess, May 21, 2008].)
From the familial relationships that genetic testing could disclose to the potential discovery of genetic diseases, conditions, and predispositions, the information about plaintiff that an unspecified genetic test would provide defendants is extraordinary and constitutes a “special burden.” (Andón v 302-304 Mott St. Assoc, at 747.) Although plaintiff put his physical and mental condition at issue, the information to be gleaned from unspecified genetic testing goes far beyond the relevant issues in *297 this action. While one court has expressed its view that the DNA test sought in that action was not “an extreme discovery-tool which is very intrusive” (McGrath v Nassau Health Care Corp. at 61, quoting Harris v Athol-Royalston Regional Sch. Dist. Comm. at 35), such court was dealing only with DNA testing for identification/impeachment purposes. Here, however, defendants seek far more personal information; a genetic basis underlying plaintiffs disabilities. Moreover, defendants have not specified the type of genetic test they wish to employ nor placed any limitation on the information they would collect. As such, the broad unspecified genetic testing defendants seek constitutes an especially heavy “special burden.”
In contrast, defendants offered no factual basis to substantiate their need for genetic testing.
Conspicuously absent from defendants’ factual submissions are allegations, made by an individual with knowledge of genetic testing, explaining the scientific reliability of their proposed test. Likewise, defendants offered no facts or legal foundation that the genetic testing they seek to utilize has “accepted techniques, [that] when properly performed, generate results accepted as reliable within the scientific community generally.” (People v Wesley at 422; Frye v United States, 293 F 1013 [DC Cir 1923].) While DNA testing for identification purposes is ubiquitous, defendants’ proposed testing, to determine the genetic cause of a disability, is uniquely novel. With this record, defendants offered no proof that there currently exists a scientifically reliable test to ascertain the genetic cause of plaintiff’s behavioral issues and learning disabilities. Without such proof, defendants’ proposed genetic test constitutes a mere fishing expedition that would cause undue delay.
In addition, the factual assertions defendants offered are wholly unavailing. Defendants submit a single hearsay sentence, made by their attorney, to establish their need for genetic testing. He states that the defendants’ pediatric neurologist “suspects there is a genetic cause for Cameron’s presentation, and he noted that the child has several anatomical dysmorphic features that support his theory that a genetic condition is responsible for the child’s overall presentation.” Because defendants’ attorney’s statement[2] is not based upon “personal knowledge of the operative facts [it is of no] . . . probative val *298 ue.” (2 N. St. Corp. v Getty Saugerties Corp., 68 AD3d 1392, 1395 [3d Dept 2009]; Groboski v Godfroy, 74 AD3d 1524 [3d Dept 2010].) Moreover, even if accepted for its truth, defendants’ attorney offered an insufficient explanation of the test, its scientific reliability or the genetic condition suspected. Moreover, his recitation of what the pediatric neurologist £‘suspect [ed]” renders his allegations speculative at best. Defendants’ reliance on the affidavit and report of Michael Fearing, their pediatric neuropsychology expert, is similarly misplaced. At no point does Fearing claim to have any genetic testing knowledge. Nor does he suggest that a genetic test be performed on plaintiff. While Fearing opines that “there is a genetic component that contributes to [plainitff s] difficulties,” he does not claim that the genetic component can be ascertained by any genetic testing.
On this record, because defendants failed to demonstrate that their need for genetic testing outweighs the special burden it would place on plaintiff, defendants’ application for compelled genetic testing of plaintiff is denied.

. In this decision and order the term defendants will refer collectively to Ying-Jen Chen, M.D.; Ying Chen, M.D.; Ying J. Chen, M.D.; Ying C. Chen, M.D.; Community Care Physicians, EC.; and Clifton Park Pediatrics.

. Additionally, defendants’ attorney’s letter is neither sworn nor affirmed. As such, its allegations are inadmissible. (Fallon v Duffy, 95 AD3d 1416 [3d Dept 2012].)